UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MILDRED LY-DROUIN, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civ. Action No. 14-cv-13854 |
| HEALTHBRIDGE MANAGEMENT, LLC & 19 VARNUM STREET OPERATING COMPANY, LLC, d/b/a LOWELL HEALTH CARE CENTER, | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER

CASPER, J.                                                                                                              June 19, 2015

I. Introduction

Plaintiff Mildred Ly-Drouin ("Ly-Drouin") filed this lawsuit against defendants Healthbridge Management, LLC and 19 Varnum Street Operating Company, LLC which together operate the Lowell Health Care Center (the "Center") (collectively, the "Defendants") alleging wrongful termination and seeking declaratory relief and damages. D. 9-1 at 4. The Defendants have moved to dismiss. D. 4. For the reasons stated below, the Court ALLOWS the motion without prejudice to filing an amended complaint.

II. Standard of Review

In considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court will dismiss a pleading that fails to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly,

1

550 U.S. 544, 570 (2007). To state a plausible claim, a claim need not contain detailed factual allegations, but it must recite facts sufficient to at least "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557) (alteration in original). At bottom, a claim must contain sufficient factual matter that, accepted as true, would allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, "[i]n determining whether a [pleading] crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.' . . . This context-specific inquiry does not demand 'a high degree of factual specificity.'" García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (internal citations omitted).

### III. Factual Background

The following facts are drawn from the complaint and accepted as true, as they must in evaluating the Defendants' motion to dismiss. Ly-Drouin began working at the Center in 2011 as the Neurorehabilitation Program Director. D. 9-1 ¶ 7. On August 1, 2013, one resident of the Center allegedly used a knife to commit an assault and battery on another resident. Id. ¶ 9. Ly-Drouin was not at work when the incident occurred, but she was told about it at work the next morning. Id. ¶10. Ly-Drouin was further informed that the Director of Nursing Services instructed a nursing supervisor to dispose of the knife used in the incident and to refrain from sending the two patients involved to the hospital. Id. ¶¶ 11-12. Thereafter Ly-Drouin "asked

nursing and therapeutic staff to write and sign statements regarding the incident." Id. ¶ 13. Ly-Drouin's assistant's statement allegedly indicated that the nursing supervisor gave him the knife, and he then gave the knife to Ly-Drouin's boss. Id. ¶ 14. That day, Ly-Drouin gave the assistant's statement to her boss and faxed all of the employees' statements to the Center's neuropsychologist "as instructed by her clinical supervisor." Id. ¶ 15-16.

A few days later, Ly-Drouin's assistant allegedly told her that he had been asked to rewrite his statement. Id. ¶ 20. Ly-Drouin further alleges that around that time her boss became upset with her and called her a whistleblower. Id. ¶ 21. She was then suspended for five days and received a warning from her boss for making false allegations regarding the Director of Nursing Services, for failing to communicate with her boss regarding the allegations, and for making inconsistent statements to investigators. Id. ¶¶ 22-23. Ly-Drouin disputes the validity of the grounds for this warning, alleging that she "followed protocol regarding the clinical situation." Id. ¶¶ 24-26.

A few months later, on October 30, 2013, Ly-Drouin was fired, purportedly for inadequate performance. Id. ¶ 27. Ly-Drouin alleges that the real reason for her termination was "her participation in the investigation and for reporting conduct to her superiors." Id. ¶ 30.

Count I of Ly-Drouin's Complaint claims the conduct precipitating her termination "was protected or mandated and she was assisting in an investigation or report." Id. ¶ 32. She further claims that her termination violates public policy. Id. ¶ 33. Count II seeks declaratory relief. Id. ¶ 35.

## IV. Procedural History

Ly-Drouin instituted this action in the Middlesex Superior Court on August 8, 2014. D. 9-1. The Defendants removed it pursuant to 28 U.S.C. § 1332, D. 1, then moved to dismiss, D.

4. The Court heard the parties on the pending motion and took the matter under advisement. D. 18.

## V. Discussion

### A. Wrongful Termination

There appears to be no dispute that Ly-Drouin was an at-will employee who could be fired at any time "for almost any reason or for no reason at all." D. 9-1; Wright v. Shriners Hosp. for Crippled Children, 412 Mass. 469, 472 (1992) (internal quotation marks omitted). Massachusetts law, however, recognizes an exception to the traditional at-will employment doctrine "where the discharge is for reasons that violate public policy." Flesner v. Technical Commc'ns Corp., 410 Mass. 805, 810 (1991). "'Redress is available for employees who are terminated for asserting a legally guaranteed right (e.g., filing workers' compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury).'" GTE Prod. Corp. v. Stewart, 421 Mass. 22, 26 (1995) (quoting Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., 404 Mass. 145, 149-50 (1989)). "[E]mployees terminated for performing important public deeds, even though the law does not absolutely require the performance of such a deed," may also assert claims for wrongful discharge. Flesner, 410 Mass. at 810-11 & n.3 (endorsing claim based on discharge for cooperating with ongoing customs investigation and stating that whistleblowing might also qualify as an important public deed).

"Whether there is a sufficiently defined public policy is a matter of law for the Court to determine." Simas v. First Citizens' Fed. Credit Union, 63 F. Supp. 2d 110, 114 (D. Mass. 1999). The public policy exception, however, is not so broad as "to convert the general rule that 'an employment-at-will contract [can] be terminated at any time for any reason or for no reason

4

at all' into a rule that requires just cause to terminate an at-will employee." Smith-Pfeffer, 404 Mass. at 150 (quoting Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 668 n.6 (1981)) (alternations in original). Moreover, "[i]nternal policy decisions are a matter of judgment for those entrusted with decision making within [an] institution" and thus may not form the basis for a claim of wrongful discharge. Id. at 151 (declining to extend public policy exception to employee fired for criticizing superintendent's administrative abilities and reorganization plan).

Ly-Drouin's complaint fails to state a claim for wrongful discharge in violation of public policy. She does not allege that her termination resulted from her assertion of a legally guaranteed right, from actions she took in compliance with the law, or from her refusal to engage in legally prohibited conduct. D. 9-1. She also fails to describe conduct that qualifies as an "important public deed" worthy of protection from discharge. Id. She merely asserts that the conduct for which she was discharged was "protected or mandated" and that she was "assisting in an investigation or report." Id. ¶¶ 32-33. The conduct at issue is alleged to be "her participation in the investigation" and her "reporting conduct to her superiors." Id. ¶ 30. The investigation she references was at most an internal inquiry, which does not rise to the level of conduct protectable as an important public deed. See King v. Driscoll, 418 Mass. 576, 583 (1994) (stating that "the internal administration, policy, functioning and other matters of an organization cannot be the basis for a public policy exception to the general rule that at-will employees are terminable at any time with or without cause"); Wright, 412 Mass. at 472 (concluding that termination in reprisal for employee's critical remarks to survey team did not violate public policy); Mello v. Stop & Shop Cos., 402 Mass. 555, 560-61 (1988) (holding public policy not violated where employee was discharged for making complaints about internal matters).

Ly-Drouin does not proffer any allegations from which it may be inferred that her actions related to more than an internal matter. She does not allege that she was cooperating with law enforcement authorities in their investigation, if any, of the alleged assault and battery incident. The complaint does not explain why she gathered Center employees' statements regarding the incident, stating only that she faxed the statements to the facility's neuropsychologist "as instructed by her clinical supervisor" and that she "followed protocol regarding the clinical situation." D. 9-1 ¶¶ 16, 24. Ly-Drouin does not aver that she was required by law to gather or transmit the statements or that the alleged protocol was mandated by any public authority. See Hobson v. Maclean Hosp. Corp., 402 Mass. 413, 416-17 (1988) (holding that nursing administer could pursue a claim based on her discharge for her efforts to comply with state laws and regulations regarding supervision of patients).

In Ly-Drouin's opposition to the Defendants' motion to dismiss, she argues that the protected conduct was her "required report about a criminal act between patients (assault and battery with a weapon, to wit, a knife)." D. 8 at 6. Ly-Drouin correctly points out that a claim does not lie where an employee is discharged for an "internal complaint about company policies or the violation of company rules," but that liability may be imposed where an employee lodges an internal complaint regarding the alleged violation of a criminal law. Shea v. Emmanuel College, 425 Mass. 761, 762-63 (1997). "A policy that protects an at-will employee who, in good faith, reports criminal conduct in her place of employment to public authorities, but does not protect an at-will employee who in good faith reports such conduct to her superiors would be illogical." Id. at 763. The Shea court concluded that an employer was liable for terminating an employee who made internal complaint made about an alleged violation of criminal law. Id. at 762-63.

Ly-Drouin has not plausibly alleged that she, like the plaintiff in Shea, sought to report criminal conduct to her superiors. The complaint indicates that Ly-Drouin was not at work at the time of the alleged incident, only learning of it when she arrived at the Center the next day. D. 9-1 ¶ 10. She could not have reported the alleged criminal conduct to her superiors when, it may be inferred from her complaint, her superiors already knew about it. Id. ¶¶ 11-12 (allegations regarding alleged instructions from Director of Nursing Services). In addition, nowhere in the complaint does Ly-Drouin allege that that she was fired for reporting a criminal violation. Instead she states that her termination resulted from "her participation in the investigation" and her report of "conduct to her superiors." Id. ¶ 30. It is insufficient that criminal activity might have occurred at the Center and that Ly-Drouin's activities were tangential to that potentially criminal conduct. To pursue a claim under the public policy exception set forth in Shea, Ly-Drouin has to allege that she herself reported suspected criminal activity in the workplace to her superiors.

A perhaps more plausible theory of Ly-Drouin's claim, based on her complaint, is that she was fired for reporting alleged efforts to cover-up the assault and battery incident. Ly-Drouin, however, does not specifically allege what public policy protects her internal report of a suspected cover-up. In her brief, she implies that such a report "was required by law" and that she made the report at the request of her employers. D. 8 at 7. The complaint, however, fails to indicate any statutory or regulatory requirement to make her report, or even that her collection of employees' statements regarding the incident and cover-up was at the behest of anyone except herself.[1] See In re Tyco Int'l, Ltd., No. MD-02-1335-B, 03-1339-B, 2004 WL 532193, at * 1

---

[1] At the motion hearing, Ly-Drouin's counsel suggested that a failure to take action or to present her concerns would have placed Ly-Drouin and the Center's licenses in jeopardy. These

7

(D.N.H. Mar. 16, 2004) (noting that inquiry on motion to dismiss is limited "to the facts alleged in the complaint, incorporated into the complaint, or susceptible to judicial notice").

Similarly, if Ly-Drouin had alleged that there was an ongoing investigation by law enforcement of the stabbing incident and that the investigation was somehow impeded by the Defendants' conduct, then the case before Court would likely be different. Public policy protects a plaintiff who is terminated for trying to prevent the obstruction of justice. As noted, protected employee conduct includes "refusing to do that which the law forbids." Nelson v. Anika Therapeutics, Inc., No. 09-03231-A, 2011 WL 4056329, at *6 (Mass. Super. Aug. 12, 2011), aff'd, 83 Mass. App. Ct. 1126 (2013). Obstruction of a criminal investigation is clearly prohibited by law and any refusal on Ly-Drouin's part to engage in such activity would be protected. The complaint, however, does not address any police investigation of the stabbing incident or that Ly-Drouin tried to prevent the hindrance of a law enforcement investigation. D. 9-1.

Because Ly-Drouin's complaint is bereft of any allegations that explain the specific nature of her conduct, why it is protected, and the public policy violated by her termination, her complaint must be dismissed. Nonetheless, because the Court cannot conclude that an opportunity to re-plead would be futile, the Court dismisses without prejudice and grants Ly-Drouin leave to cure these deficiencies even as the Court expresses no opinion about whether she will be able to do so.

**B.     Declaratory Relief**

Ly-Drouin's second claim is for declaratory relief pursuant to Mass. Gen. L. c. 231A. D. 9-1 ¶ 35. She seeks "a binding declaration of right, duty, status, and other legal relations." Id.

---

factual allegations, however, are not contained in the complaint nor did the opposition cite any law for this proposition.

Without a case or controversy sufficient to withstand a motion to dismiss before the Court, Ly-Drouin's related claim for declaratory relief must also be dismissed. <u>Galipault v. Wash Rock Investments</u>, LLC, 65 Mass. App. Ct. 73, 83 (2005) (explaining that a court may entertain a petition for declaratory relief only where the pleadings present an actual controversy that can survive a motion to dismiss).

**VI.     Conclusion**

For the foregoing reasons, the Court ALLOWS the Defendants' motion to dismiss without prejudice, D. 4, and grants leave to Ly-Drouin to file an amended complaint if she is able to cure the deficiencies in her complaint, to be filed no later than July 7, 2015.

**So Ordered.**

<u>/s/ Denise J. Casper</u>
United States District Judge